Waldov et ux., Appellants, *v.* Philadelphia Rapid Transit Company.

Argued October 29, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Louis Sherman,* for appellants.

*Layton M. Schoch,* with him *Bernard J. O'Connell,* for appellee.

OPINION BY RHODES, J., December 18, 1935:

This is a suit in trespass by the plaintiffs to recover for personal injuries sustained by the wife plaintiff

while a passenger in the trolley car of the defendant. The jury found for the plaintiffs. The court below granted defendant's motion for judgment non obstante veredicto. Plaintiffs appealed to this court.

The wife plaintiff was a passenger in one of the defendant's trolley cars on May 27, 1933. Her testimony as to the manner in which the accident occurred is as follows: "A. I got on the trolley car at Elmwood Avenue and Island Road. I paid my fare as I entered, and I walked towards the center of the trolley car. I was seated there. When the car started past 82nd and Eastwick, I arose and walked to the front of the trolley. I was carrying the baby in my left arm, and I held the iron rail with my left-hand. The car came to a very unusual and sudden stop and I was thrown to the street. Someone helped me up. I went to my mother's, which was about six or seven doors from the corner. Q. Mrs. Waldov, how were you thrown to the street? A. I fell on my left side. Q. Was the trolley door opened before the car came to a stop, or was it closed? A. It seemed to stop and the doors opened at the same time. Q. Will you describe to the members of the jury what you mean by the very sudden and unusual stop of the trolley car? A. It was so sudden and unusual that it jarred my hand loose—I was holding on and I was thrown right to the street. ...... Q. And then I understand you that you were standing up and the car came to a stop and the doors opened at the same time? A. Yes. Q. And then you fell out or were thrown out—I will put it your way? A. Thrown out; yes. Q. With your daughter in your left arm? A. Yes. Q. Were you carrying any other bundles? A. No; I don't think so. ...... Q. How old is this child? A. She was nineteen months at the time."

The only other witness to the accident, who testified

for the plaintiffs, was Nicholas Saunders. He testified: "A. After nearing 83d and Eastwick Avenue, why Mrs. Waldov walked up to the door. Q. To the front door? A. To the front door of the trolley car, and she was waiting there for the car to come to a stop at 83d and Eastwick Avenue, and the doors of the trolley car opened up before the car came to a complete stop. Just as Mrs. Waldov was in the act of stepping down on the lower step, the car came to a sudden, unusual stop, and caused her to lurch over like, and start to fall forward, and she left go of the child. I could not see the child hit the pavement, because she was facing sort of back of me. After she started to fall down there was a man there, I don't recall— ...... Q. Will you describe what effect, if any, the very unusual and sudden stop had upon you? A. Well, it sort of made a sort of whip-crack out of me, jerked your head back, sort of like a whipcrack. Of course, this is my own expression. ...... Q. Were there a lot of people standing in the car? A. There were some standing at the front, yes, getting ready— Q. Waiting to get out? A. Waiting to get out; yes. Q. What did this stop do to you? A. Why, it threw my head back, and then I got up to see, because I saw Mrs. Waldov starting to fall. I got up out of my seat. Q. Did the stop seem to have any effect on anybody else on the trolley car? A. I guess everybody's head flew back. Q. I mean did you notice about the other people on the platform? A. Yes; all lurched, it threw me against the seat, and it seemed everybody grabbed hold of the upright pieces." This witness also testified that, as the wife plaintiff was in the act of stepping down, the unusual stop of the trolley car "threw her off her balance and caused her to fall."

The motorman and three other witnesses testified for the defendant. They said there was no unusual or sudden stop, or jerk, or jolt of the car at the time of the alleged accident.

Appellants contend that the verdicts in their favor should not be disturbed, as there was sufficient evidence to show an unusual operation and an abrupt stop of the trolley car of the defendant.

The question presented for our determination is whether there is sufficient evidence to show negligent operation of the defendant's trolley car. For this purpose we shall view the testimony in a light most favorable to the plaintiffs, and draw all reasonable inferences therefrom in their favor.

In the case of Endicott v. Philadelphia Rapid Transit Company, 318 Pa. 12, 14, 177 A. 17, 18, in an opinion by Mr. Justice DREW, the Supreme Court said: "In a long line of decisions, recently reviewed by us in Smith v. Pgh. Rys. Co., 314 Pa. 541, 171 A. 879, this court and the Superior Court have held that statements that a street car 'started violently,' 'started with a violent jerk,' 'started with a sudden, unusual, extraordinary jerk,' 'stopped with a jerk,' 'came to a hard stop,' 'started up all of a sudden, with an awful jerk, and stopped all of a sudden,' and the like, are not of themselves sufficient to show negligent operation of the car, but that there must be evidence inherently establishing that the occurrence was of an unusual and extraordinary character, or evidence of its effect on other passengers sufficient to show this."

In the case of McClusky v. Shenango Val. Traction Company, 105 Pa. Superior Ct. 275, 161 A. 424, this court held that such descriptive language, as "everybody in the car lurched," was not sufficient proof of negligence in the operation of defendant's car.

We are of the opinion that the evidence in the present case is insufficient to meet the requirements laid down by our decisions to show that the occurrence was of an unusual and extraordinary character.

The testimony of the witness Saunders was to the effect that the stopping of the trolley car made sort of a

whipcrack out of him and jerked his head back, and that those standing in the car all lurched and seemed to grab hold of the upright pieces, while it threw him against the seat. This witness also testified that the trolley car came to a "sudden, unusual stop, and caused her [wife plaintiff] to lurch over like, and start to fall forward ......" Such testimony is insufficient to establish negligence, in the operation of the trolley car, on the part of the motorman. It establishes no occurrence of an unusual and extraordinary character, as trolley cars often stop with a jerk under ordinary circumstances. Harkins et ux. v. Philadelphia Rapid Transit Co., 286 Pa. 465, 134 A. 376. The testimony of the wife plaintiff likewise fails to establish defendant's negligence. She arose and walked to the front of the car as it passed 82d and Eastwick Streets. She was carrying her nineteen month old baby in her left arm, and with her left hand held onto the iron rail. According to her description of the accident, as the car stopped, the doors opened, her left hand was jarred loose, and she was thrown to the street. Her testimony is insufficient, standing alone, to show negligent operation of the car. The plaintiff's position, in holding her nineteen month old child in her left arm, and with the left hand holding onto the iron bar, was such that an ordinary jolt or jerk of the trolley car would be sufficient to cause her to lose her balance under the circumstances. As stated in the case of Cutler v. Philadelphia Rapid Transit Company, 319 Pa. 351, 352, 179 A. 434: "The rule is now settled that testimony indicating that a moving trolley car jerked suddenly or violently is not of itself sufficient to establish negligence unless from other facts and circumstances it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation." The testimony in the instant case fails to meet this requirement.

Moreover, the testimony of plaintiffs' witness Saunders, if believed, shows contributory negligence on the part of the wife plaintiff. He testified that the wife plaintiff was in the act of stepping down on the lower step of the car while the doors were open and before the car came to a complete stop. Such an act upon the part of the wife plaintiff, under the circumstances, plainly constitutes negligence on her part.

Assignment of error is overruled. Judgment of the court below is affirmed.